**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO.** |
| **v.** | : | |
| | : | |
| **TOTAL SYSTEMS SERVICES, LLC,** *f/k/a* **TOTAL SYSTEMS SERVICES, INC.** | : | |
| | : | |
| | : | **JURY TRIAL DEMAND** |
| **Defendant.** | : | |
| _____ | : | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Joyce Poulson ("Poulson"), who was adversely affected by them. The Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Total Systems Services, LLC, ("Defendant"), discriminated against Poulson when it denied her request for a reasonable accommodation of remote work, failed to provide an alternative reasonable accommodation, and constructively discharged her. The EEOC further alleges that Defendant retaliated against Poulson

for engaging in statutorily protected activity, i.e. request and use of a reasonable accommodation of temporary leave, by denying her request to work remotely and constructively discharging her.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to: Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.    At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

5.    At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6.    At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.    More than thirty days prior to the institution of this lawsuit, Poulson filed a Charge of Discrimination with the Commission alleging violations of the ADA by Defendant.

8.    On April 4, 2022, the Commission issued a Letter of Determination finding reasonable cause to believe that the ADA had been violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.    The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.    The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11.    On September 2, 2022, the Commission issued to Defendant a Notice of Failure of Conciliation.

12.    All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13.    In or about September 2016, Poulson began her employment with Defendant in the McDonough, Georgia call center.

14.    In approximately 2017, Poulson began working on the Loyalty Team in the McDonough call center as a Customer Service Representative.

15.    Poulson is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Poulson has multiple related physical and mental impairments: diabetes, hypertension, and anxiety. These impairments substantially limit a number of major life activities.

16.    Poulson's physical impairment of diabetes substantially limits the major life activity of the operation of her endocrine system.

17.    Poulson's physical impairment of hypertension substantially limits the major life activity of the operation of her cardiovascular system.

18.    Poulson's mental impairment of anxiety substantially limits the major life activity of the operation of her brain.

19.    Poulson's physical impairments—diabetes and hypertension —render her a "high risk" individual with respect to COVID-19. As a "high risk" individual, Poulson's risks of serious complication, serious illness, and death as a result of contracting the COVID-19 virus and/or any variant thereof are increased.

20.    Throughout her employment with Defendant, Poulson occasionally traveled to doctor's appointments during or around the workday, with the approval of her supervisor, Assistant Manager of the Loyal Team.

21.    Poulson's supervisor knew Poulson suffered from diabetes and hypertension.

22.    Her supervisor occasionally discussed one or more of Poulson's conditions with her, typically before or after one of Poulson's doctor's appointments.

23.    As a Customer Service Representative on the Loyalty Team, Poulson assisted credit card holders with respect to Card Loyalty programs.

24.     Poulson's job was organized by the clients for whom Defendant provided Card Loyalty Services. For example, Poulson was trained for and handled customer concerns on a client-by-client basis, with each client-issuer and its related customer concerns being an "issuer account."

25.     In early 2020, Poulson primarily provided customer service for three issuer accounts, although she was trained to handle more.

26.     Poulson's job duties comprised (1) duties discharged through phone calls; (2) duties discharged through a computer or computer software programs; and (3) occasional meetings with supervisors and/or colleagues.

27.     These duties could be completed remotely.

28.     On a regular basis beginning in or about April 2020 and continuing through August 7, 2020, employees working at the call center were testing positive for COVID-19, and an email was sent to the call center employees on each such occasion.

29.     Approximately April 9, 2020, Poulson's supervisor informed the Loyalty Team that some employees would be allowed to work remotely due to concerns regarding the spread of the COVID-19 virus.

30.     The supervisor informed employees that they had to meet certain criteria to be eligible to work remotely. These included: (1) no "current

counselings"; (2) good attendance records; (3) be self-sufficient; (4) have a quiet workspace available; (5) have a low "after-call work" average; and (6) have sufficient internet speeds to support remote work as determined by Defendant.

31.    In addition to these criteria, Defendant also evaluated whether an employee's issuer accounts included any issuer that contractually prohibited remote work when determining whether an employee was eligible.

32.    Poulson was not selected to be among the first group of remote workers from the Loyalty Team.

33.    On or about May 14, 2020, Defendant informed Poulson that a call center worker tested positive for COVID-19. Poulson immediately self-quarantined in response.

34.    On or about May 19, 2020, Poulson's physician sent Defendant a note stating Poulson was advised to self-quarantine for 14 days and excusing her from work from May 15, 2020 until June 3, 2020.

35.    Poulson applied for and was granted Short Term Disability leave from the date of exposure until her return date of June 3, 2020.

36.    On or about May 24, 2020, Poulson requested the reasonable accommodation of working remotely. Despite being on leave, Poulson made herself

available for any questions, discussions, or preconditions regarding her transition to remote work as an accommodation.

37.    Poulson's accommodation request was denied.

38.    While working in the office since April 2020, Poulson noticed that many employees at the call center failed to wear masks, worked in close proximity with each other, and frequently gathered together in common areas and the break room. These workplace realities made Poulson increasingly fearful that she would contract COVID-19 at work.

39.    As a result of Poulson's high-risk status and failure to secure remote work, she was diagnosed with and continues to suffer from anxiety for which she takes prescribed medication.

40.    On or about June 1, 2020, Poulson again requested the reasonable accommodation of remote work due to her health conditions and high-risk status. She provided a physician's note recommending that she work from home and not go into the office.

41.    Defendant again denied Poulson's request.

42.    As a result of Defendant's denial of Poulson's accommodation requests, Poulson applied for and was granted FMLA leave until July 9, 2020.

43.    Poulson's request for, receipt of, and use of FMLA leave as an alternative temporary accommodation was statutorily protected activity.

44.    Poulson applied for FMLA leave to avoid returning to the workplace and risking exposure while she pursued her request to work remotely.

45.    Defendant was aware that Poulson applied for leave to wait for a remote work slot to become available to her.

46.    On or about June 12, 2020, Poulson's supervisor told her that she was under consideration for remote work. Poulson was asked to conduct a speed test to ensure she satisfied Defendant's technological criteria for remote work.

47.    Defendant believed Poulson failed the speed test but told Poulson she still may be allowed to work remotely, nonetheless.

48.    However, later that day, Poulson's supervisor told Poulson that she would not be considered for any remote work position as long as she was on leave for any reason per Defendant's policy.

49.    As such, Poulson was excluded from the Loyalty Team's June 2020 group of remote workers because she was on statutorily protected FMLA leave.

50.    On or about July 8, 2020, Poulson again requested the reasonable accommodation of working remotely.

51.    Her request was ignored and thereby denied.

52.    Poulson returned to work in person at the call center on July 9, 2020. She repeatedly asked various managers and human resources employees about the status of her request to work remotely.

53.    At the time of Poulson's return to the workplace, the overwhelming majority of the Loyalty Team was working remotely.

54.    Poulson was one of less than ten Loyalty Team employees who were not allowed to work remotely.

55.    Moreover, Defendant had allowed members of the Loyalty Team to work remotely despite failing to meet one or more of the stated remote work criteria, including allowing remote work if the relevant contract with issuer clients prohibited remote work.

56.    Beginning in or about April 2020 and continuing through August 7, 2020, Defendant failed to take adequate measures to mitigate the spread of COVID-19 in the call center.

57.    At all times relevant to this action, Poulson could perform all essential functions of her position with an accommodation.

58.    At all relevant times, multiple reasonable accommodations, including remote work, were available to Defendant that would reduce Poulson's risk of exposure to COVID-19. At no point did Defendant offer her any such reasonable

10

accommodation. Poulson's repeated requests for a reasonable accommodation were denied by Defendant.

59.    On or about August 7, 2020, having never been offered remote work and any other reasonable accommodation that would have allowed her to perform her job, Poulson resigned her employment feeling forced to choose between continuing her employment and an unreasonable risk of exposure to a potentially fatal virus.

## STATEMENT OF CLAIMS

### *Failure to Accommodate*

60.    Since at least April 2020, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b) by unlawfully denying Poulson's requests for a reasonable accommodation for her disabilities.

61.    The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 as if fully asserted herein.

62.    Poulson requested the accommodation of working remotely that would allow her to perform the essential functions of her job.

63.    Poulson's requested accommodation was reasonable.

64.    Defendant unlawfully and repeatedly denied Poulson's requested accommodation.

65.    Defendant failed to grant any alternative accommodation to Poulson that would allow her to perform the essential functions of her job.

### *Constructive Discharge*

66.    Since at least April 2020, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b) by constructively discharging Poulson because of her disabilities and/or because she engaged in protected activity.

67.    The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 as if fully asserted herein.

68.    At all relevant times, multiple reasonable accommodations, including remote work, were available to Defendant that would reduce Poulson's risk of exposure to COVID-19.

69.    At no point did Defendant offer Poulson any such reasonable accommodation. Poulson's repeated requests for a reasonable accommodation were denied by Defendant.

70.    On or about August 7, 2020, Poulson resigned her employment.

12

71.    Defendant constructively discharged Poulson by presenting her with a choice so unreasonable that an objective individual in Poulson's position would have no option but to resign.

## *Retaliation*

72.    Since at least April 2020, Defendant has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. § 12112(a) and (b) by retaliating against Poulson for engaging in protected activity.

73.    The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 59 as if fully asserted herein.

74.    As a result of Defendant's denial of her accommodation requests, Poulson applied for and was granted FMLA leave until July 9, 2020.

75.    Poulson's request for, receipt of, and use of FMLA leave as an alternative temporary accommodation was statutorily protected activity.

76.    Poulson applied for FMLA leave to avoid returning to the workplace and risking exposure to COVID-19 while she pursued her request to work remotely.

77.    Defendant was aware that Poulson applied for leave to wait for a remote work slot to become available to her.

78.    Poulson was excluded from remote work by Defendant because of her use and enjoyment of statutorily protected leave.

79.    Poulson's repeated requests for a reasonable accommodation were denied by Defendant.

80.    On or about August 7, 2020, Poulson was forced to resign from her employment.

81.    The effects of the practice(s) complained of above have been to deprive Poulson of equal employment opportunities and otherwise adversely affect her status as an employee because of her disabilities and/or because she engaged in protected activity.

82.    The unlawful employment practices complained of above were intentional.

83.    The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Poulson's federally protected rights.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate on the basis of disability by denying reasonable accommodations to disabled employees, discharging employees based on the disability, and by taking

adverse employment actions against persons who engage in protected activity under the ADA

B.      Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees with disabilities and/or who engage in protected activity and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Poulson whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.      Order Defendant to make Poulson whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.      Order Defendant to make Poulson whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.      Order Defendant to pay Poulson punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the

public interest.

H.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this

Complaint.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

/s/ *Meeta Dama*
Meeta Dama
Trial Attorney
Georgia Bar No. 398137
U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
meeta.dama@eeoc.gov
(470) 531-4852